Bill number 18-1278, Jeffrey Hardy v. Michael Maloney. Mr. Shacketoff, good morning. Good morning. If it pleases the Court, Robert Shacketoff for Mr. Hardy. In 1979, I appeared before the SJC. I was 30 years old, and I argued Commonwealth v. Bowdoin. And that's the issue I want to address today, some 40 years later. In Bowdoin, the Supreme Judicial Court, in its decision, said that the failure of authorities to conduct certain tests or produce certain evidence was a permissible ground on which to build a defense in the circumstances of the Bowdoin case. The failure of the authorities to conduct certain tests or produce certain evidence, the fact that certain tests were not conducted or certain police procedures not followed, could raise a reasonable doubt as to defendant's guilt in the minds of the jurors. So the SJC has never retreated from that. What they've said instead was, in the Hardy case and in other cases, we've never held that you must instruct on this Bowdoin issue. All we've ever held is that it's permissible to instruct on the Bowdoin issue. It's a matter of discretion. Now, there is no case law in Massachusetts that describes what the discretion of the judge is, how the judge is supposed to decide in his or her discretion whether to charge or not. In fact, in Hardy, our case, the SJC said there was no abuse of discretion here, because even though this was the main defense of Mr. Hardy, there was no abuse of discretion. Now, I guess I'm prompted to observe that of the eight or nine claims that you've raised, I'm a little surprised that you choose to focus on this Bowdoin issue, because it seems perhaps the least likely one to allow you to argue that the SJC was involved in an unreasonable application of the law of the Supreme Court or law that was contrary to it. I mean, it's a discretionary instruction under Massachusetts law. I mean, how do you get from that to the argument that you ultimately have to make? Okay, and fair enough, Your Honor. I think it's my best issue. This is what makes horse racing. That's a fair judgment for you to make, for sure. So, it is true that it is a discretionary instruction in Massachusetts with no guidance as to when discretion should be used or not used. But whatever Massachusetts' position is, the United States Supreme Court has said in the United States v. Matthews that you're entitled, and I say as a matter of due process and constitutional fairness, to an instruction on any recognized defense. So, even though Massachusetts has persisted for the last 40 years since they've decided Bowdoin, that we don't have to give an instruction, the United States Supreme Court, in my view, has said you do in these circumstances. And the way Massachusetts gets out of following Matthews is by saying, well, in Matthews, which was an entrapment case, that in Massachusetts, entrapment produces some sort of element that the commonwealth has to, or some sort of theory, offense, that the commonwealth has to prove or disprove beyond a reasonable doubt. And in your case, Mr. Hardy, there's nothing that, in the Bowdoin case, that creates an element that has to be proved or disproved beyond a reasonable doubt. And to that I say that's a sleight of hand. Because an identification instruction or an alibi instruction, both of which Massachusetts requires, those things go to who is the perpetrator. And that's what Bowdoin goes to. The theory of Bowdoin is because the police didn't conduct appropriate investigations, because they didn't follow appropriate leads, because they didn't do the right testing, we don't know who the perpetrator was. And I'm allowed to argue that in closing argument to a jury in Massachusetts, and that is completely legitimate. And I don't see this defense as any different than an identification defense or an alibi defense. This is a defense that I'm entitled to a theory of defense instruction on under the federal Constitution. There are two different issues. One is what you can argue, and the other is whether the state judge is required to give an instruction. Was the argument made to the jury here? Yes. So I agree, Your Honor, those are two separate issues, unless the Constitution requires an instruction on a topic that's a, quote, unquote, recognized defense. So under Matthews, this is a recognized defense. And if I suggest to the judge that I want an instruction on this defense. Isn't your theory that under Bogan, the state has recognized this defense? Yes. And therefore, if you apply Matthews to Bogan, it follows that this SJC is acting unreasonably by leaving it as a discretionary instruction? Exactly my point. Much better put than I would. I'm glad I understood it. Because my presentation was that confusing. That's my theory. And I don't see the flaw in that theory. Because the SJC's way of getting around that theory is by pointing to this elements idea. But they require the instruction for identification. They require the instruction for alibi. And this is the exact same theory, which is I've got a basis for claiming and arguing to the jury. And the jury under Massachusetts law has a basis for concluding that my guy is not the perpetrator because of the nature of the police investigation. Judge Lopez has suggested you might want to talk about some of your other claims. You've already told us this is your best one. I believe it is, Your Honor. I think it's my most interesting claim, and it's been a passion for 40 years. And perhaps that blinds me. But I think not. So is there another issue that more interested the court than this one? That's entirely your call, Mr. Secretary. Okay. So I would like to contrast this one with my consciousness of guilt argument. Now here the SJC feels that it's totally appropriate to pick out one piece of evidence in a case, the fact that he may have misstated something to the police during his initial interview, and to inform the jury that on that evidence by itself, by itself, they should not convict. But that, I suggest, focuses the jury's attention so much on that piece of evidence that they have to be warned that by that piece of evidence itself they cannot convict. Why don't I get a Bowdoin instruction? Because it's too sort of evidentiary when you can, under consciousness of guilt, point out a single piece of evidence in the entire case and warn the jury that that alone should not be sufficient to convict. They should comb the record for some other tidbit, because with another tidbit, that is sufficient to convict. So I'm back to Bowdoin, Your Honor. There is no justification for not giving a Bowdoin instruction, and I think that the SJC knows there's no justification because they lay out no rule, no test to apply when it should be given and when it shouldn't be given, how to exercise your discretion on it. And in my case itself, they say, yeah, that was the main defense. I'm just curious, Mr. Sheketoff, I mean, the choice of the prosecution to focus on inadequate police work and to show how all the deficiencies in the investigation can create a reasonable doubt about the government's case, I mean, that is a commonplace of prosecutions everywhere. I mean, is Massachusetts unique with its Bowdoin instruction in creating an instruction that goes to that really commonplace of criminal prosecution? I have not encountered elsewhere an instruction like the Bowdoin instruction. Is that peculiar to Massachusetts? I do not know, Your Honor. I can't answer that question, honestly. I'm sorry? I cannot answer that question, honestly. I'm not sure what other jurisdictions have done with this. In Bowdoin itself, the judge had instructed the jury they were not to consider the absence of evidence. So that crystallized the issue for the court because they said that clearly is wrong. In fact, you can build an entire defense on these failures. Has Matthews ever been applied to a Bowdoin-type situation before? Not that I'm aware of. And isn't that a problem for you right then and there? I don't believe so, Your Honor. Clearly established Supreme Court law. I think Matthews is clearly established Supreme Court law. I think it is a general proposition that if there's a recognized offense, you're entitled to an instruction on it if you request it. And this is just one type of recognized offense. Matthews was ‑‑ I do understand the argument. Okay. Okay. I'm going to ask Judge Stahl at this point whether he has some questions for you. Judge Stahl? I do not. Okay. Thank you. Counsel. Good morning. May it please the Court. My name is Thomas Boshin. I represent the respondent, Michael Maloney. Because time was given to the Bowdoin claim, I'll address that very, very briefly first, and then I'd like to turn to the claim involving the vouching and the immunity order, and then lastly a few words about what happened on the view. First, with respect to Bowdoin, no Supreme Court case that I've seen, and none that's been cited, requires states to confer upon defendants a defense of inadequate police investigation. So that's off the table. The question would be whether ‑‑ and also the Supreme Court has said that the states, in Maloney v. Wilbur, Gilmore v. Taylor, there's a whole slew of cases where the Supreme Court has said that the states can define the elements of crime and they can also define the defenses. Here the SJC has said that Bowdoin is not a formal defense under state law. That state law determination under Bradshaw v. Ritchie is binding here. So the only thing that's left for the petitioner is whether the failure to give the instruction under Henderson v. Kibbe and Estelle rendered the trial fundamentally unfair or infected the whole trial with unfairness, and it didn't. Here the petitioner was able to make the arguments about the inadequate police investigation. The issue was before the jury. The jury just simply did not accept it. That's a sort of, if you will, as applied approach. Are you also saying that just the theory itself can never be applied in such a way as to make a state court decision unreasonable? No, not under the standard of did it infect the trial with fundamental unfairness. If there was a case where the failure to give this instruction somehow did rise to that kind of due process violation, then perhaps there could be a remedy. But the position here is that it just did not. Turning to the claim involving the vouching, at trial Rogovich testified that he appeared in the SJC and he was given immunity. There was no testimony that there was this sort of personal interaction between a single justice of the SJC and Rogovich. So as the SJC properly recognized, it was wrong for the prosecutor to suggest that there was when there was no record support for that. But, of course, the claim before the SJC and now before this court is much different than that. The question is, did the SJC unreasonably conclude that in light of everything else that happened at trial, this did not rise to the level of due process violation? I'd suggest that there are at least three things that the court can look at in determining that the SJC did not make an unreasonable determination in that regard. First would be, can a court give a curative instruction to cure a factual misstatement by a prosecutor? We know from Donnelly that the answer to that is yes. Second, the prosecutor's baseline or gist of his message was that the order of immunity required the witness to come in and testify truthfully. The question would be, have federal courts held that that kind of baseline statement is not remediable with a curative instruction? The Seventh Circuit in Johnson said not only was that very kind of argument not prejudicial, but that it wasn't even improper in the first place. And third, was a strong curative instruction given? And here the SJC said that there was, and in fact there was. The trial judge at the very beginning of her charge, and that's at page 37-34 of the supplemental appendix, said that you must take your law from me. Then a little bit later in the charge, she said you heard about the immunity process, and the prosecutor said that it was in a personalized form. It was not in that personalized form. She expressly said that the prosecutor's personalized version of immunity was wrong. And then she went on to explain correctly, according to the SJC, the immunity process under state law. So given all of those circumstances, plus the brevity of the remark and the strong evidence against the petitioner, the SJC did reasonably conclude that the prosecutor's improper statement didn't rise to the level of a due process violation. And then finally, on the issue of the view, the judge took the appropriate and cautious step here that this Supreme Court has endorsed of calling all of the jurors in. Counsel was present. When counsel asked the judge to ask another follow-up question to the juror, the judge asked another follow-up question to the juror. And after she went through this entire process, the judge found that the jurors remained indifferent. The petitioner hasn't come forward with anything to rebut that, no clear and convincing evidence to rebut those findings. Instead, the petitioner has turned to the pretrial publicity cases, Ervin v. Dowd, Maxwell v. Shepard. But in those cases, the Supreme Court used words like bedlam, circus, carnival, to describe what had happened in the trial. Half the panel in one of the cases had to be disqualified for cause because of the publicity. Reporters had overtaken the courtroom. Jurors were allowed to make telephone calls during deliberations. This case does not approach that this case was an incidence of an extraneous influence reaching the jury, and the judge followed the protocol that's been suggested in Remmer in all of the cases in that line. Unless the court has other questions on any of the issues, I'll rest on the brief. Judge Stahl, do you have any questions? I do not. Okay. Thank you both. We'll take it under advisement.